HOLT (BYRNE v.). See Case No. 2,272.

## Case No. 6,647.

### HOLT et al. v. DORSEY.

[1 Wash. C. C. 396.] [1]

Circuit Court, D. Pennsylvania. April Term, 1806.

#### PRINCIPAL AND AGENT—PAYMENT TO AGENT.

A and B shipped a cargo of goods for C, but consigned them to D, the partner of E. Before the arrival of the goods, D died. C became bankrupt, and the defendant, under a power of attorney from E, took possession of them, sold them, and remitted part of the proceeds to E; at the same time informing A and B of his having taken possession of the goods; and when he remitted in part their proceeds to E, he advised A and B of such remittances, who approved of the whole of his proceedings. *Held*, that the defendant did not become the agent of the shippers, but was the agent of E; and that any remittances made to E, of which advice was not given by the defendant to A and B, that they were for the proceeds of the goods, were not a payment to A and B.

[Cited in Winship v. Bank of U. S., 5 Pet. (30 U. S.) 568.]

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

The plaintiffs [Holt & Co.] living in an interior part of England, in 1799, they shipped a cargo of goods, intended for a merchant in Baltimore; but to secure themselves, in case of any accident happening to the person so intended, they sent them to order; and a Mr. Willis, of that town, the partner of M'Call Medford of London, was authorized to receive them. At the same time, Medford, the friend of the plaintiffs, but who was not authorized thereto, by the plaintiffs, sent out a power of attorney, to the defendant [John Dorsey] to act in this business, if necessary. Before the arrival of the goods, Willis, the agent of the plaintiffs, died; and the person on whose account the goods were sent, having become bankrupt, the defendant took possession of the goods, and brought them to Philadelphia, where a part of them were disposed of. He informed the plaintiffs what he had done; and received their approbation and thanks, recognising the act of Medford, in procuring his interference upon the event, which had taken place, of the death of Willis, their agent. The defendant made remittances, through Medford, to the plaintiffs, which the plaintiffs received. The goods not sold, were delivered over to Mr. Lyle, the agent of the plaintiffs, in this country. The defendant corresponded with the plaintiffs, respecting these goods, and promised to remit the proceeds to them; and when he did remit, through Medford, he informed Medford, as well as the plaintiffs, on what account it was made. The defendant was the agent of Medford, in other transactions, and remitted them large sums of money, generally without making an appropriation of them; except in the cases above mentioned, where specific sums were remitted for the plaintiffs. A balance still remained due to the plaintiffs, which had not been remitted to the plaintiffs, or to Medford, on their account, by any specific appropriation. The plaintiffs, in a letter to the defendant, requested him to remit either to them, or to Medford, for them. It appears, by an award made in a dispute between the defendant and Medford, that a balance was due from the former, to the latter, of a larger sum than is now claimed by the plaintiffs, which the defendant was adjudged to pay, provided he received a full indemnification against the claim of the plaintiffs, for a part of that sum. The referees were of opinion, that the defendant was liable to Medford, and he to the Holts. Medford became a bankrupt two or three years ago.

It was argued by the plaintiffs' counsel, that if the defendant remitted the sum now claimed to Medford, unless he ordered the same to be paid over to the plaintiffs, the plaintiffs were not bound by it. That it appearing, that the defendant was a debtor to Medford, unless such an application was made, Medford had a right, which it appears he exercised, to apply the same to his own debt. That the defendant was a mere volunteer in this business, having been appointed

by Medford, as the substitute for Willis; and of course, he had no right to remit to Medford, so as to bind the plaintiffs, further than he was authorized by the plaintiffs to do; and consequently, that when he remitted to Medford, it was his duty to give notice both to Medford and to the plaintiffs, that the remittance was for them. But as the defendant was the acknowledged debtor to Medford, it could not, without such an application, appear, that the remittance ever was made. On the other side, it was argued, as if Medford and Willis had been the agents of the plaintiffs, and the defendant their agent; and consequently, it was contended, first, that there was no privity between the plaintiffs and the defendant (Roll, Abr. 607, 117; 4 Leon. 23; Fitz. 272); and secondly, that payments to Medford, before notice from the plaintiffs not to make them, were binding on the plaintiffs.

Porter & Tilghman, for plaintiffs.
Rawle & Meredith, for defendant.

WASHINGTON, Circuit Justice (charging jury). In the manner that this cause was opened, and treated by the plaintiffs' counsel, the court thinking, that the defendant was the agent of Medford & Willis, and that they were the agents of the plaintiffs, were of opinion, and should have charged the jury to this effect, that payments to Medford, before notice from the plaintiffs, that he was not to do so, would exonerate the defendant. But, upon a more correct understanding of the correspondence, it is plain, that Willis, in his individual capacity, was the plaintiffs' agent, and that the substitution of the defendant was a mere friendly, but unauthorized act of Medford, which entirely changes the nature of the case; for under this view of it, Medford, instead of being the constituent, was the agent of the defendant, through whom his remittances were made to the plaintiffs; and, from all the defendant's letters, it is clear that, he considered himself, as the agent of the plaintiffs only. These remittances, however, were authorized by the plaintiffs, but then it was essential, that whenever a remittance made to Medford, was intended for the plaintiffs, the defendants should, when making it, have declared to Medford, that it was so intended. There is the most solid reason for this. Because, as the defendant had to make considerable payments to Medford, on account of other transactions, if he did not apply the payment, it put it in the power of Medford to do it; and therefore, whatever might have been the real intention of the defendant, he prevented the plaintiffs from calling on Medford, for any part of a general remittance, or from enforcing payment, which would not have been the case, had he stated, that the money remitted was for the plaintiffs. We are not prepared to say, that notice was necessary to the plaintiffs, who possibly dispensed with it, by the general unqualified authority given to defendant, to remit to Medford. This being the case, any payments made to Medford, not specially appropriated to the plaintiffs, are not good as against the plaintiffs, and therefore the plaintiffs are entitled to a verdict.

The jury accordingly found for the plaintiffs their full demand.

[In Case No. 9,389, a rule obtained by defendant, to show cause why a judgment entered by virtue of an award of arbitrators, with provision for an indemnity, was discharged. The judgment, having been paid in full, was declared satisfied by the court. Id. 9,390.]